IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

ERIKA HILGERS-LUCKEY,

                Plaintiff,           Case No. 3:11 dp 20387

-vs-

                                                MEMORANDUM   OPINION

DEPUY ORTHOPAEDICS, INC., et al.,

                Defendant.

KATZ, J.

## BACKGROUND

Erika Hilgers-Luckey, James Williams, Martha Bing, and Jane Hogan (hereinafter "Plaintiffs") initiated this action in January 2011, in the Circuit Court of the Sixth Judicial Circuit, Champaign County, Illinois. Named as defendants are DePuy Orthopaedics, Inc., DePuy, Inc., Johnson & Johnson, Inc.,(collectively referred to as "DePuy Defendants") and Premier Orthopaedic Sales, Inc. ("Premier"). On March 11, 2011, the DePuy Defendants removed this action to the Central District of Illinois on the basis of fraudulent joinder and contemporaneously moved for a stay of proceedings pending a transfer of the action to MDL 2197. One week later, Premier filed a motion to dismiss.

In late March, 2011, the Judicial Panel on Multidistrict Litigation, pursuant to 28 U.S.C. § 1407, transferred this case from the Central District of Illinois to the Northern District of Ohio as part of the MLD 2197, *In re DePuy Orthopaedics Inc. ASR Hip Implant Products Liability Litigation*, 1:10 md 2197 (N.D. Ohio). (Doc. Nos. 10 and 11.) Thereafter, Plaintiffs filed their motion to remand.

This matter is before the Court on Plaintiffs' motion for remand, Defendants' opposition and Plaintiffs' reply thereto. Also before the Court is Plaintiff's motion for oral argument and

Defendants' response thereto. For the reasons set forth below, Plaintiffs' motion for remand is granted and the motion for oral argument is denied as moot.

## MOTION TO REMAND

*A. Applicable Legal Standard*

Federal courts are courts of limited jurisdiction and possess only that which has been authorized by the United States Constitution or statute. *Kokkenen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Under 28 U.S.C. § 1441(a), a defendant may remove any civil action from state to federal court only if the district courts of the United States have original jurisdiction, both at the time of the original action and when the petition for removal is filed. *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987); Fed. R. Civ. P. 19(a). Following removal to district court, a plaintiff may move to remand the action back to state court within thirty days after the notice of removal is filed. 28 U.S.C. §§ 1446(a) & 1447(c). If the Court lacks subject matter jurisdiction, remand is proper. *Id*.

Original jurisdiction exists when the dispute involves a federal question, 28 U.S.C. § 1331 or when the amount in controversy exceeds $75,000 and there is diversity of citizenship, 28 U.S.C. § 1332. *See also*, 28 U.S.C. § 1441(a), (b). Diversity requires complete diversity as to each defendant named in the complaint. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989), citing *Strawbridge v. Curtiss*, 7 U.S. 267 (3 Cranch) (1806). Federal court subject matter jurisdiction is determined at the time of removal. *Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939). The removing party bears the burden of establishing subject matter jurisdiction. *Village of Oakwood v. State Bank and Trust Co.*, 539 F.3d 373, 377 (6th Cir. 2008). In light of federalism and comity concerns, federal courts must strictly construe removal jurisdiction and

resolve all doubts in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *Coyne v. American Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

A fraudulently joined party cannot defeat a court's subject matter jurisdiction. *Id*. To establish fraudulent joinder the removing party must demonstrate there is no possibility that the plaintiff will be able to establish a cause of action against the nondiverse defendant in state court or that there has been outright fraud in the plaintiff's pleadings of jurisdictional facts. *Id*. A plaintiff's motive in joining a defendant is immaterial to this determination. *Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999). The movant's burden of persuasion on fraudulent joinder is substantial. *Averdick v. Republic Fin. Servs., Inc.*, 803 F.Supp. 37, 44 (E.D. Ky. 1992) (claims of fraudulent joinder must be supported by clear and convincing evidence). *See also, Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 302 (2nd Cir. 2004), *cert. denied*, 544 U.S. 949 (2005). Doubts are resolved against removal and in the non-movant's favor. *Alexander v. Electronic Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994) (citations omitted).

In determining remand, the court considers plaintiff's pleadings at the time of removal as well as supplemental affidavits or deposition testimony. *Pacheco de Perez v. AT&T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998). The court does not weigh the merits of the claim; rather, the determination is whether there is a reasonable basis for liability under the applicable state law. Stated differently, the court's inquiry is limited to whether there exists a "colorable basis for predicting that plaintiff may recover against non-diverse defendants." *Coyne*, 183 F.3d at 493. *See also Walton v. Bayer Corp.*, 643 F.3d 994, 999 (7th Cir. 2011) (no reasonable possibility that a state court would rule against a nondiverse defendant).

The Sixth Circuit endorsed the following guidelines when considering remand: "[w]hen deciding a motion to remand, including fraudulent joinder allegations, we apply a test similar to, but more lenient than, the analysis applicable to a rule 12(b)(6) motion to dismiss." *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 433(6th Cir. Sept. 19, 2012), citing *Walker v. Philip Morris USA, Inc.*, 443 Fed. Appx. 946, 952-54 (6th Cir. 2011).

*B. Discussion*

The DePuy Defendants contend Defendant Premier is fraudulently joined because there is no reasonable basis for concluding the claims of strict liability and negligence would succeed against the non-diverse defendant. As framed in their notice of removal, Defendants advocate that application of the Illinois Distributor Statute requires dismissal of the non-manufacturer, Premier, from the litigation deeming them fraudulently joined.

In their motion to remand, Plaintiffs take the opposite view that Premier is subject to liability and not subject to the protections of the Illinois Distributor Statute. In addition to seeking remand, Plaintiffs request reimbursement of attorney fees for the alleged wrongful removal of this action from state court.

    1. Illinois Distributor Statute

Strict liability is broadly imposed upon all entities who place a product in the stream of commerce in Illinois. *Benson v. Unilever United States, Inc.*, __F.Supp.2d ___, 2012 WL 3150305 *5 (S.D. Ill, Aug. 1, 2012). A non-manufacturing distributor may be dismissed from suit under the "seller's exception" to the Illinois Distributor Statute, as follows:

> (a) In any product liability action based in whole or part on the doctrine of strict liability in tort commenced or maintained against a defendant or defendants other than the manufacturer, that party shall upon answering or otherwise pleading file an

4

> affidavit certifying the correct identity of the manufacturer of the product allegedly causing injury, death or damage. . .
>
> (b) Once the plaintiff has filed a complaint against the manufacturer or manufacturers, and the manufacturer or manufacturers have or are required to have answered or otherwise pleaded, the court shall order the dismissal of a strict liability in tort claim against the certifying defendant or defendants, provided the certifying defendant or defendants are not within the categories set forth in subsection (c) of this section. . .

735 ILL. COMP. STAT. 5/2-621(unamended version)[1].

A non-manufacturing defendant or distributor may then be dismissed unless the plaintiff can "show one or more of the following:

> (1) That the defendant has exercised some significant control over the design or manufacture of the product, or has provided instructions or warnings to the manufacturer relative to the alleged defect in the product which caused the injury, death or damage; or
>
> (2) that the defendant had actual knowledge of the defect in the product which caused the injury, death or damage; or
>
> (3) That the defendant created the defect in the product which caused the injury death or damage."

*Id.*

Finally, the statute contemplates reinstatement of a non-manufacturing defendant who has been dismissed where the plaintiff can show certain circumstances justify vacating the previous dismissal. *Id*. at (b)(1-5).

2. Strict Liability Claims against Premier

---

[1] The Illinois Supreme Court in *Best v. Taylor Machine Works*, 689 N.E.2d 1057 (Ill. 1997), declared Public Act 89-7 which ultimately became 735 ILCS 5/2-621, unconstitutional in its entirety. This reinstated the prior unamended version, as quoted above, and for purposes of this discussion, the Court will refer to the unamended version of 735 ILCS 5/2-621. *See also Benson*, __F.Supp.2d __, 2012 WL 3150305 *6 (S.D. Ill. 2012).

The question before the Court is whether Plaintiff has sufficiently pled a cause of action under one of the exceptions to keep Premier in this litigation. The Defendants contend Plaintiffs have not alleged "actual knowledge of a defect" sufficient to meet the exception and keep the seller in the litigation. This Court turns to Illinois case law on this issue.

An Illinois appellate court in *Murphy v. Mancari's Chrysler Plymouth, Inc.,* 887 N.E.2d 569 (Ill. App.Ct. 2008) considered whether the statutory exception requiring actual knowledge of the defect required knowledge of the characteristics of the product or that such characteristics made the product dangerous. *Id*. at 574. After examining the statute, the legislative intent and definition of the term defect, the panel determined:

> [T]he obvious interpretation of section 2-621(c)(2) requires a plaintiff to show that a presumptively dismissed defendant had actual knowledge of the unreasonably dangerous nature of the physical characteristics/design of the product, not just actual knowledge that the physical characteristics/design existed in order to avoid dismissal of that defendant.

*Id*. at 576.

The panel in *Murphy* examined the Illinois legislature's treatment of this strict liability statute and its introduction of the common law element of fault into this analysis but only for these limited exceptions. That rationale was summed up as follows: "[i]f a plaintiff cannot show that a nonmanufacturer defendant did anything wrong with regard to putting the allegedly dangerous product into the stream of commerce, section 2-621 provides the means whereby that defendant can avoid the litigation expense of defending a strict liability action in which, if it was not at fault in any way, it would ultimately have its damage award indemnified by the actual wrongdoer, the manufacturer, anyway."

6

In this case, the Court considers the pleadings to determine the viability of a state court action. There are no contested issues of fact regarding the pleadings which require the Court to pierce the pleadings or conduct a summary inquiry as neither of the parties has offered affidavits or summary-judgment evidence to challenge or support factual allegations in the pleadings. *Walker*, 443 Fed. Appx. at 953.

In this case, the complaint contains common allegations as to strict products liability against Premier and specifically alleges:

> 6. Premier is not protected by the Illinois Distributor Act, 735 ILCS 5/2-621, from liability resulting from its sale of an unreasonably dangerous product by virtue of one or more of the following:
>
>    A. Premier, at the time of the insertion of the ASR Prosthesis into the Plaintiff, knew one or more of the following:
>
>        (i) that very high revision rates were being reported in patients with the ASR Prosthesis;
>
>        (ii) that patients were experiencing high levels of metal particles or ions entering into surrounding tissues from the AST Prosthesis;
>
>        (iii) that patients were experiencing deterioration of body tissues from metal particles or ions from the ASR Prosthesis; and
>
>        (iv) that patients were experiencing high levels of metal particles or ions from the ASR Prosthesis entering into the bloodstream through which they were distributed throughout various parts of the body.
>
>    B. Despite the knowledge set forth in subparagraph A above, Premier continued to distribute the ASR Prosthesis and failed to warn physicians of the known hazards and the need to monitor patients.
>
>    C. Despite the knowledge set forth in subparagraph A above, Premier failed to discontinue the distribution and sale of the ASR Prosthesis.

(Compl. at p. 20.) As to each of the specific strict product liability claims against Premier, the complaint states as follows:

7

>Defendant Premier knew based upon the personal observations of its employees, representatives or owners, and/or information learned from other sources, that the ASR prosthesis implanted in Plaintiff was unreasonably dangerous for one or more of the reasons stated in [the] Common Allegations as to Premier Orthopaedic Sales, Inc., ¶10, at the time the ASR prosthesis left Premier's possession or control.
>
>Despite this knowledge, Premier failed to prevent the unreasonably dangerous ASR prosthesis from entering the stream of commerce.

(*Id*. at pp. 22-27.)

Upon careful review of the pleadings and the Sixth Circuit's guidance in *Casias*, this Court finds Plaintiff has stated a colorable cause of action as to the strict liability claims under the Illinois Distributor Statute. While Plaintiff does not use the term "actual knowledge," the specific knowledge alleged to be within the purview of Premier regarding the effects of DePuy hip implants demonstrates the "defendant had actual knowledge of the unreasonably dangerous nature of the physical characteristics/design of the product," sufficient to withstand a challenge to the viability of the pleadings.

As the Court has determined there is a colorable cause of action, it need not address the issue of fraudulent joinder regarding a conditional dismissal. *See Halperin v. Merck, Sharpe & Dohme Corp.*, 2012 WL 1204728 n.2 (N.D. Ill. 2012). Additionally, because remand will be granted and in consideration of Case Management Order 11[2], the Court declines to address Premier's motion to dismiss (Doc. No. 8).

3. Negligence Claims against Premier

---

[2] Case Management Order No. 11 states in pertinent part: " All pending motions filed in the transferor courts are vacated and superceded by this Order and subsequent orders issued by this Court. The parties may refile those motions in the MDL 2197 case specific docket." *In re DePuy Orthopaedics, Inc. ASR Hip Implant Products Liability Litigation*, 1:10 md 2197 (N.D. Ohio, October 31, 2011) (Doc. No. 299).

Defendants also seek to dismiss the negligence claims on the basis they do not articulate facially plausible claims and lack a colorable basis. As correctly noted by Plaintiff, Section 2-621 does not apply to negligence claims. *Whechel v. Briggs & Stratton*, 850 F.Supp.2d 926, 937 (N.D. 2012) (collecting cases).

Under Illinois law in order to state a claim sounding in negligence:

> [A] complaint must allege facts that establish the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by the breach.

*Simpkins v. CSX Transportation, Inc.*, 965 N.E.2d 1092, 1096 (Ill. 2012), citing *Marshal v. Burger King Corp.*, 856 N.E.2d at 1053 (Ill. 2006).

The Court turns to the common allegations as to the negligence claims asserted against Premier:

> 6. Premier has had an extensive involvement in regard to the ASR Prosthesis including one or more of the following:
>
> A. Premier personnel have undergone training on an ongoing and continuing basis conducted by or on behalf of DePuy as to not only the technical details of the ASR Prosthesis but the surgical techniques for implanting the ASR Prosthesis and for performing revision procedures so as to promote sales of the ASR Prosthesis.
>
> B. Premier has undertaken to provide training in operative techniques for the surgeons installing the ASR Prosthesis including all or substantially all of the physicians installing the ASR Prosthesis in the plaintiffs so as to promote sales of the ASR Prosthesis.
>
> C. Premier personnel have accompanied surgeons into the operating suite to provide assistance in installing the ASR Prosthesis and to further train the surgeons in regard to the ASR Prosthesis so as to promote sales of the ASR Prosthesis.
>
> 7. As a result of its extensive involvement in the distribution, sale and training as to the ASR Prosthesis, Premier knew, or should have known, of the problems being experienced with elevated metal levels resulting from the ASR

9

> Prosthesis and the substantial failure rate being experienced by the ASR Prosthesis that required revision surgery.
>
> 8. By virtue of the foregoing, Premier was under the duty to exercise ordinary care in the distribution, training and assistance of physicians in regards to the ASR Prosthesis.
>
> 9. Premier violated said duty in one or more the following ways or in a combination thereof:
>
>> A. Failed to advise physicians that problems had developed with the ASR Prosthesis resulting in a substantial revision rate.
>>
>> B. Continued to promote the ASR Prosthesis.
>>
>> C. Continued to promote the ASR Prosthesis after knowledge that the ASR Prosthesis was unreasonably dangerous.
>
> 10. As a direct and proximate result of one or more or a combination of the aforesaid negligent acts or omissions, each Plaintiff had an ASR Prosthesis implanted which ASR Prosthesis has filed or is failing with the result that the metal particles or ions entered the surrounding tissue causing a deterioration of the tissue and entered into the bloodstream through which they were distributed throughout various parts of the body thereby causing metal poisoning.

(Compl. at pp. 14-15.)

"[E]ven though a complaint need not contain 'detailed' factual allegations, its 'factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true.'" *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, *Ohio*, 502 F.3d 545, 548 (6th Cir. 2007) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice. *Twombly*, 550 U.S. at 555 (stating that the complaint must contain something more than "a formulaic recitation of the elements of a cause of action"). A complaint must state sufficient facts to, when accepted as true, state a claim "that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (explaining that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully" and requires the complaint to allow the court to draw the reasonable inference that the defendant is liable for the alleged misconduct).

In conjunction with this standard, the Court is cognizant that Fed. R. Civ. P. 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (*citing Twombly*, 550 U.S. at 596); *see also Sensations, Inc. v. City of Grand Rapids,* 526 F.3d 291, 295-96 (6th Cir 2008).

A reading of the common allegations as to negligence along with the specific counts of negligence as contained in Counts Nine through Twelve, meet the plausibility standard sufficient to withstand a challenge to the viability of those claims at this juncture of the proceedings. For these reasons, the Defendants' motion is not well taken as to the claims sounding in negligence against Premier.

4. Request for Attorney's Fees

Finally, Plaintiffs request an award of attorney's fees and costs. Under 28 U.S.C. § 1447(c), where the court remands an action "the case may require payment of just costs and actual expenses, including attorney fees, incurred as a result of the removal."

In *Martin v. Franklin Capital Corp.* 546 U.S. 132 (2005), the Supreme Court discussed the limits of a trial court's discretion by noting, "we have found limits in 'the large objectives' of the relevant Act, which embrace certain 'equitable considerations.'" *Id* at 139-140, quoting *Flight*

11

*Attendants v. Zipes* 491 U.S. at 759. After discussing these considerations, the Court in *Martin* stated:

> The appropriate test for awarding fees under §1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

*Id*. at 140. Based upon these considerations, the Court held, "[a]bsent unusual circumstances, courts may award attorney's fees under §1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." *Id.* at 141.

In the case *sub judice*, after reviewing the notice of removal and considering the parties' arguments relative to remand, the Court finds Defendants did not lack an objectively reasonable basis for removal. Just because the Defendants were not successful in overcoming the motion to remand is insufficient reason to warrant an award under §1447(c). There is nothing before the Court which constitutes unusual circumstances nor is there evidence to indicate removal was undertaken to prolong the litigation and increase costs. For these reasons, Plaintiff's motion is denied as to fees and costs under §1447(c).

## CONCLUSION

For the reasons stated above, the Court finds Plaintiff's motion to remand (Doc. No. 12) is granted and the Clerk of Court is instructed to remand this case back to the Sixth Judicial Circuit court in Champaign County, Illinois. Additionally, Plaintiff's motion to remand (Doc. No. 12) as to the request for attorney's fees and costs pursuant to 28 U.S.C. §1447(c) is denied. Finally, Plaintiff's motion for oral argument (Doc. No. 17) is denied as moot.

IT IS SO ORDERED.

  S/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE